IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,758

STATE OF KANSAS,
*Appellee*,

v.

COREY A. EUBANKS,
*Appellant*.

SYLLABUS BY THE COURT

1.

A sentence is illegal if it does not conform to the applicable statutory provisions, either in character or punishment. An illegal sentence can be corrected at any time.

2.

Kansas law allows district courts to order restitution as part of a criminal defendant's sentence. Restitution includes, but is not limited to, damage or loss caused by the defendant's crime. Restitution is due immediately unless (1) the court orders the defendant be given a specified time to pay or be allowed to pay in specified installments or (2) the court finds compelling circumstances that would render restitution unworkable, either in whole or in part.

3.

When read together, K.S.A. 2020 Supp. 21-6604(e) and K.S.A. 2020 Supp. 22-3717(n) permit the district court to specify in its sentencing order the amount of restitution to be paid and the person to whom it shall be paid as a condition of postrelease supervision in the event the Prisoner Review Board declines to find compelling circumstances that would render a plan of restitution unworkable. These two statutes

1

create a presumption of validity to the court's journal entry setting the amount and manner of restitution.

4.

K.S.A. 2020 Supp. 22-3717(n) does not require the journal entry to specify that restitution be paid as a condition of postrelease supervision.

5.

Plea agreements are akin to civil contracts. The primary rule for interpreting a contract is to ascertain the parties' intent. We exercise unlimited review over the interpretation of contracts and are not bound by the lower court's interpretations or rulings.

6.

A district court may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, under a plea agreement, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 10, 2021. Appeal from Douglas District Court; AMY J. HANLEY, judge. Opinion filed August 26, 2022. Judgment of the Court of Appeals affirming the district court and remanding the case with directions is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Brian Deiter*, assistant district attorney, argued the cause, and *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.: The State charged Corey A. Eubanks with burglary of a nondwelling, two counts of felony theft, and criminal damage to property. As part of a plea deal, he pled no contest to an amended charge of attempted theft in exchange for the State dismissing the original charges. The district court sentenced Eubanks to 10 months in prison and ordered him to pay restitution to the two victims of the burglary and theft "as a condition of [Eubanks'] postrelease."

On direct appeal, Eubanks challenged the district court's award of restitution. He argued he did not agree to pay restitution to one of the victims because that loss resulted from the dismissed charges and was unrelated to his sole conviction for attempted theft. Eubanks also claimed his sentence was illegal because the district court lacked authority to order restitution as a condition of his postrelease supervision. A Court of Appeals panel affirmed the district court's restitution order, finding Eubanks affirmatively confirmed at the plea hearing and at sentencing that the plea agreement contemplated restitution to both victims. The panel also held the district court had authority to order restitution as a condition of Eubanks' postrelease supervision but remanded for the district court to issue a new journal entry clarifying the payment of restitution was a condition of postrelease supervision.

On review, Eubanks argues the panel erred in affirming the district court's restitution order. He contends, as he did below, the district court lacked authority to order restitution as a condition of postrelease supervision and he did not agree to pay restitution to a victim whose loss was unrelated to his conviction for attempted theft.

3

On March 11, 2018, a thief cut a section of the fence on the border of the Globe Quarry in Douglas County, broke into a locked trailer owned by Ditch Diggers, Inc., and stole a generator and chainsaws from the trailer. The thief also stole 300 to 400 feet of copper wire and three CAT batteries from the quarry property. Alan Platt owned the copper wire and the batteries.

Law enforcement's investigation pointed to Eubanks as the perpetrator. The State charged Eubanks with burglary of a nondwelling, two counts of felony theft, and criminal damage to property.

The parties appeared before the district court on October 30, 2019, where defense counsel advised the court that Eubanks had entered into a plea agreement with the State. The written plea agreement is not included in the record on appeal, but the prosecutor recited the terms of the agreement as follows:

> "The defendant is going to plead either guilty or no contest to the amended charge of attempted theft, which is a subsection of receiving stolen property, a level 10 nonperson felony.
>
> "The State will agree to dismiss the remaining charges. Sentencing will be open. Defendant can argue whether—for the sentence of prison, probation, or whether it's consecutive or concurrent to what he's in KDOC for. And obviously the State will argue its position.
>
> "Pay restitution to the *victims*, and that amount is not available yet. 18-TR-2017, the State will dismiss at the defendant's costs, which he's free to ask the court to waive." (Emphasis added.)

Defense counsel agreed the prosecutor's recitation of the plea agreement was accurate and "essentially states what it is." Eubanks waived his right to a preliminary hearing on the amended charge of attempted theft, and the district court proceeded with the plea hearing. Eubanks confirmed he understood the charge against him, was aware of the maximum penalties he faced, understood he would relinquish certain rights by entering the plea agreement, was competent to enter the plea, and was not threatened or coerced to plead no contest. During the plea colloquy, the following exchange occurred:

"THE COURT: Okay. Now, the plea agreement was stated for the record. You heard [the prosecutor] state the plea agreement, correct?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Is that the plea agreement as you understand it?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Are you satisfied with that plea agreement?

"THE DEFENDANT: Yes, ma'am."

Eubanks entered a plea of no contest to the attempted theft charge, which related to the property stolen from Platt. The district court found a factual basis for the plea based on evidence at the preliminary hearing on Eubanks' original charges. The court accepted Eubanks' plea and found him guilty of attempted theft. After the court scheduled the sentencing hearing, defense counsel stated, "[A]s soon as we hear something about restitution, we may well want a hearing with respect to the restitution."

At Eubanks' sentencing hearing, the district court asked if anyone wanted to speak before sentencing. Neither Platt nor anyone from Ditch Diggers was present, but the prosecutor stated,

"I do have a statement. . . . And this is from [Alan] Platt, P-L-A-T-T, one of the two victims. He said . . . we were finishing a phase of a [job] for Douglas County road when all of the copper wire and ground rods, along with the fiberoptic wire off the scales on the conveyer were taken off. Also, three large 4D batteries were removed. . . .

"The extra overtime and running to get the replacement parts was almost a full day long with the downtime of the plant. That was a lot of unneeded work. I can also say the owner of Ditch Diggers has also conveyed that this theft of the chainsaws and other property cost them significant downtime, so there was a direct impact on the parties because of the defendant's crimes."

The prosecutor continued,

"Judge, first of all, I will relate back to how this crime did impact the victims. There was almost $10,000 worth of property taken. And as part of the plea agreement the defendant has agreed to pay restitution. [Alan Platt] is $4,425.71. . . . And to Ditch Diggers, Inc., $4,601.04. And I will note that that does not include any labor, any time lost. This is simply for the value of the stolen equipment that was not recovered."

In response, defense counsel advised that "with respect to restitution we'd like to have a hearing on the subject of the amount of restitution." The district court acknowledged Eubanks was entitled to a hearing but noted a restitution hearing would require the court to continue the sentencing hearing to a later date. After consulting with Eubanks, defense counsel said, "Well, I think under the circumstances since it's a very large amount of money and my client is entitled to justification by the *parties* involved as to *their losses*, I think we really need to have a hearing." (Emphases added.) When asked

6

how many witnesses the State would call at a restitution hearing, the prosecutor said she would call two. The prosecutor also said,

> "But I would like to put on the record that I provided a restitution order with the actual receipts for the—I mean, the value of the stolen property has been provided, so they're just going to take the stand and say exactly the same thing that's written here, and the defendant has agreed to pay restitution. So I've got two witnesses, Judge."

At this point, defense counsel advised the district court that Eubanks had changed his mind about the restitution hearing and "under the circumstances he would just as soon go ahead and be sentenced." The court then personally addressed Eubanks, who confirmed he wanted to proceed with sentencing without contesting the amount of restitution requested by the State.

The district court sentenced Eubanks to 10 months in prison and 12 months of postrelease supervision. The court also ordered Eubanks to pay restitution. The judge expressly stated,

> "I am going to order as a condition of your postrelease that you pay restitution to [Alan Platt] in the amount of $4,425.79, and to Ditch Diggers in the amount of $4,601.04. I should also note that that restitution can be worked on while you're in custody paying towards it as well."

The sentencing journal entry of judgment reflected the district court's award of restitution to Platt and to Ditch Diggers.

On direct appeal, Eubanks challenged the district court's restitution order. Eubanks argued he did not agree to pay restitution to Ditch Diggers, a victim of the dismissed charges. Eubanks also claimed the restitution award resulted in an illegal sentence

because the district court lacked authority to order restitution as a condition of postrelease supervision. See *State v. Eubanks*, No. 122,758, 2021 WL 4127725, at *3-4 (Kan. App. 2021) (unpublished opinion).

A Court of Appeals panel affirmed the district court's restitution order. First, the panel held the award of restitution to Ditch Diggers was valid because Eubanks had agreed to pay Ditch Diggers under the terms of the plea agreement. 2021 WL 4127725, at *3-4. Second, the panel found the district court had authority under K.S.A. 2020 Supp. 21-6604(e) and K.S.A. 2020 Supp. 22-3717(n) to order restitution as a condition of postrelease supervision. But because the sentencing journal entry of judgment failed to state restitution was a condition of Eubanks' postrelease supervision, the panel remanded to the district court to issue a new journal entry expressly stating so. 2021 WL 4127725, at *4-5.

We granted Eubanks' petition for review on both issues. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Eubanks challenges the panel's decision affirming the district court's restitution order. First, he contends the panel erroneously found the district court had statutory authority to order restitution as a condition of postrelease supervision. Next, he contends the panel's remand to the district court for a new journal entry expressly stating restitution is a condition of Eubanks' postrelease supervision deprives the Prisoner Review Board (Board) of authority to consider workability of the restitution order. Finally, he contends

8

the panel erred in determining that he agreed to pay restitution to Ditch Diggers. We address each contention in turn.

1. *Restitution as a condition of postrelease supervision*

Eubanks argues the district court lacked statutory authority to order restitution as a condition of his postrelease supervision, thus rendering his sentence illegal. He asks this court to vacate that portion of the district court's restitution order. Eubanks did not raise this issue before the district court. But K.S.A. 2021 Supp. 22-3504 provides the legal authority to correct an illegal sentence at any time, so the panel appropriately considered Eubanks' argument for the first time on appeal. See *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019) (considering illegal sentence challenge for first time on direct appeal).

Restitution is part of a criminal defendant's sentence. *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). A sentence is illegal if it does not conform to the applicable statutory provisions, either in character or punishment. K.S.A. 2021 Supp. 22-3504(c)(1). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which appellate courts have unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). And whether the district court exceeded its statutory authority in ordering restitution as a condition of postrelease supervision requires interpretation of the applicable statutes, which also involves legal questions that we review de novo. See *State v. Samuels*, 313 Kan. 876, 880, 492 P.3d 404 (2021).

We begin our analysis by reviewing the relevant statutory provisions. Kansas law allows district courts to order restitution as part of a criminal defendant's sentence. Restitution "shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 2020 Supp. 21-6604(b)(1). Restitution is due immediately unless (1)

9

"[t]he court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments" or (2) "the court finds compelling circumstances that would render restitution unworkable, either in whole or in part." K.S.A. 2020 Supp. 21-6604(b)(1)(A) and (B).

When a district court sentences a defendant to prison or jail, "the court may specify in its order the amount of restitution to be paid and the person to whom it shall be paid if restitution is later ordered as a condition of parole, conditional release or postrelease supervision." K.S.A. 2020 Supp. 21-6604(e). The postrelease supervision statute, K.S.A. 2020 Supp. 22-3717, addresses restitution as follows:

> "If the court that sentenced an inmate specified at the time of sentencing the amount and the recipient of any restitution ordered as a condition of parole or postrelease supervision, the prisoner review board shall order as a condition of parole or postrelease supervision that the inmate pay restitution in the amount and manner provided in the journal entry unless the board finds compelling circumstances that would render a plan of restitution unworkable." K.S.A. 2020 Supp. 22-3717(n).

At sentencing here, the district court orally stated the amount and the recipients of restitution to be paid, ordering it "as a condition of [Eubanks'] postrelease" and noting Eubanks also could work towards paying restitution while in custody. Citing K.S.A. 2020 Supp. 21-6604(e) and K.S.A. 2020 Supp. 22-3717(n), the panel found the district court had authority to order restitution as a condition of Eubanks' postrelease supervision. *Eubanks*, 2021 WL 4127725, at *4-5.

Eubanks argues the panel's ruling contradicts a plain reading of the relevant statutes. He contends only the Board can set conditions of postrelease supervision, while a court's authority is limited to specifying the amount and manner of the restitution. To the extent Eubanks is arguing the panel found the district court has unconditional

10

authority to order restitution as a condition of postrelease supervision, Eubanks makes a valid point. But what Eubanks fails to acknowledge is that the statutes in play here provide overlapping roles for the district court and the Board when it comes to restitution and postrelease supervision. K.S.A. 2020 Supp. 21-6604(e) and 22-3717(n) must be read together. The former statute gives the district court authority to order the amount and recipient of restitution, "if restitution is later ordered [by the Board] as a condition of . . . postrelease supervision." K.S.A. 2020 Supp. 21-6604(e). The latter statute provides that the court's order setting the amount and recipient of restitution is a conditional one subject to reduction or elimination if the Board ultimately finds the restitution plan unworkable. See K.S.A. 2020 Supp. 22-3717(n). When read together, these two statutes create a presumption of validity to the court's journal entry setting the amount and manner of restitution.

And that is exactly what happened here. In ordering Eubanks to pay restitution, the district court stated from the bench,

> "I am going to order as a condition of your postrelease that you pay restitution to [Alan Platt] in the amount of $4,425.79, and to Ditch Diggers in the amount of $4,601.04. I should also note that that restitution can be worked on while you're in custody paying towards it as well."

The court's restitution order as pronounced from the bench does not limit or interfere with the Board's inherent authority to reduce or eliminate restitution at the time of release if the Board finds the restitution plan unworkable. For this reason, we conclude the court's restitution order at sentencing conforms to K.S.A. 2020 Supp. 22-3717(n) and is not illegal.

Notably, our conclusion today is consistent with the holding in *State v. Alderson*, 299 Kan. 148, 322 P.3d 364 (2014). A jury convicted Alderson of first-degree murder. At sentencing, the district court ordered restitution in the amount of $119,899.86. The court's journal entry stated: "'The Court finds that restitution is owed in this case, as set out below, and advises the Secretary of Corrections' Board of Pardon and Parole that defendant's release from incarceration should be made contingent upon defendant making restitution.'" 299 Kan. at 150. Well over 10 years after sentencing, and while Alderson was still in prison, a private collection corporation retained by the State made written demand on Alderson to pay his restitution. Alderson filed a motion requesting release from the restitution order based on its dormancy under K.S.A. 2013 Supp. 60-2403(d). We concluded the language in the journal entry was too ambiguous to subject the defendant to restitution collection during imprisonment and the district court did not have authority to impose parole conditions. Therefore, we held that "the district court did not enter an enforceable restitution judgment when it sentenced Alderson. It instead provided an advisory calculation of damages for the benefit of the Kansas Prisoner Review Board. There being no judgment of restitution, the judgment could not become dormant." 299 Kan. at 151. Likewise, here, the sentencing court entered an order specifying the amount and recipient of restitution as a condition of postrelease supervision, an order which is advisory in nature because it is subject to reduction or elimination as a postrelease supervision condition if the Board ultimately finds the restitution plan unworkable.

On direct appeal, the panel found "no merit in Eubanks' assertion that the district court lacked the authority to order him to pay restitution as a condition of postrelease supervision." *Eubanks*, 2021 WL 4127725, at *5. Based on this finding, the panel remanded "for the district court to issue a new journal entry by way of an order nunc pro tunc clarifying that the payment of restitution is to be a condition of Eubanks' postrelease supervision." *Eubanks*, 2021 WL 4127725, at *5. The panel's finding and direction on remand appears to suggest it found the district court had unconditional authority to order

12

restitution as a condition of Eubanks' postrelease supervision. To the extent the panel did so, we disapprove and specifically hold the court's authority to order restitution as a condition of postrelease supervision is conditional in nature because it is subject to reduction or elimination by the Board at the time it sets the conditions of postrelease supervision. Notwithstanding the panel's finding and remand order, we affirm its ultimate decision finding that the district court's oral restitution order at sentencing did not result in an illegal sentence. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (if court reaches correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision).

2. *Restitution as stated in the journal entry of judgment*

At the sentencing hearing, the district court pronounced from the bench the amount and the recipients of restitution to be paid as a condition of Eubanks' postrelease supervision specifically, $4,425.79 to Platt and $4,601.04 to Ditch Diggers. Although the journal entry of judgment set forth the restitution amount to be paid to each victim, it did not expressly state the restitution was ordered as a condition of his postrelease supervision. Based on this omission, the panel found the journal entry imposed a sentence at variance with that pronounced from the bench and remanded for the district court to issue a nunc pro tunc journal entry clarifying the restitution ordered is to be a condition of Eubanks' postrelease supervision. *Eubanks*, 2021 WL 4127725, at *5 (citing *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 [2012]) ("'A criminal sentence is effective upon pronouncement from the bench; it does not derive its effectiveness from the journal entry. A journal entry that imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed.'").

13

On review, Eubanks argues the panel's remand for a new journal entry stating restitution is a condition of postrelease supervision necessarily will deprive the Board of authority to consider restitution workability.

We find it unnecessary to consider Eubanks' argument because, based on the plain language of the applicable statutes, the panel erred in deciding to remand for a nunc pro tunc order.

Again, K.S.A. 2020 Supp. 22-3717(n) provides:

"If the court that sentenced an inmate specified at the time of sentencing the amount and the recipient of any restitution ordered as a condition of parole or postrelease supervision, the prisoner review board shall order as a condition of parole or postrelease supervision that the inmate pay restitution in the amount and manner provided in the journal entry unless the board finds compelling circumstances that would render a plan of restitution unworkable."

Here, the district court "specified *at the time of sentencing* the amount and the recipient of any restitution ordered as a condition of parole or postrelease supervision." (Emphasis added.) See K.S.A. 2020 Supp. 22-3717(n). Thus, the Board is required to "order as a condition of . . . postrelease supervision that the inmate pay restitution in the amount and manner provided in the journal entry unless the [B]oard finds compelling circumstances that would render a plan of restitution unworkable." K.S.A. 2020 Supp. 22-3717(n). The statute does not require the journal entry to specify that restitution be paid as a condition of postrelease supervision; it only requires the journal entry to state the restitution amount and manner in which the restitution is to be paid. In this case, the journal entry stated the restitution amount as $9,026.75 and the manner in which the restitution to be paid as:

"$ 4425.71 Alan J Platt, 2016 Clark Road, Richmond KS 66080

"$ 4601.04 Ditch Diggers Inc, PO Box 258, Salina KS 67402-0258."

Based on the analysis above, we reverse the panel's remand order directing the district court to issue a new journal entry providing that the payment of restitution was to be a condition of Eubanks' postrelease supervision.

3. *Restitution to Ditch Diggers*

Eubanks argues the panel erred in concluding he agreed to pay restitution to Ditch Diggers as part of his plea agreement. He claims the terms of the plea agreement recited at the plea hearing did not provide for restitution payments on dismissed charges. Because Ditch Diggers' loss was unrelated to his only conviction (attempted theft of Platt's copper wire and CAT batteries), Eubanks asks this court to vacate the portion of the district court's order awarding restitution to Ditch Diggers.

Eubanks did not raise this issue before the district court. Generally, a party may not raise a claim for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But the Court of Appeals exercised its prudential authority to consider the issue because it involved a question of law arising on proved or admitted facts and was determinative of the case. See *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (appellate courts not obligated to review a new claim even if an exception would support decision to do so); *Johnson*, 309 Kan. at 995 (listing exceptions to general rule that new legal theory may not be asserted for the first time on appeal).

Plea agreements are akin to civil contracts and thus may be analyzed similarly. *State v. Frazier*, 311 Kan. 378, 382, 461 P.3d 43 (2020). The primary rule for interpreting a contract is to ascertain the parties' intent. *Peterson v. Ferrell*, 302 Kan. 99, 104, 349

15

P.3d 1269 (2015). We exercise unlimited review over the interpretation of contracts and are not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

As discussed, a sentencing court has authority to order a criminal defendant to pay restitution, "which shall include, *but not be limited to*, damage or loss caused by the defendant's crime." (Emphasis added.) K.S.A. 2020 Supp. 21-6604(b)(1). A district court "may only order restitution for losses or damages caused by the crime or crimes for which the defendant was convicted unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime." *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003); see *State v. Ball*, 255 Kan. 694, 701, 877 P.2d 955 (1994) (sentencing court has authority to enter agreed-upon restitution amount where defendant agrees to pay restitution for each charged offense in exchange for State's agreement to dismiss some of the charges).

Eubanks contends the panel wrongly framed his issue as one claiming the terms of his plea agreement were ambiguous. He asserts his real argument was that the terms stated orally on the record at the plea hearing did not include an agreement to pay restitution for Ditch Diggers' loss. Eubanks alleges the panel improperly read into the plea agreement a promise to pay restitution to Ditch Diggers when he only agreed to pay for the loss resulting from the attempted theft of Platt's copper wire and batteries. Eubanks also argues restitution to Ditch Diggers is unwarranted because his attempted theft of Platt's copper wire and batteries was not the proximate cause of Ditch Diggers' loss.

Eubanks' argument is unpersuasive. Whether Ditch Diggers' loss related to Eubanks' conviction for attempted theft is irrelevant because he agreed—under the terms

16

of the plea agreement as recited and acknowledged by both parties at the plea hearing and later confirmed at sentencing—to pay restitution to Ditch Diggers.

The State initially charged Eubanks with burglary of a nondwelling, two counts of felony theft, and criminal damage to property. Under the plea agreement, Eubanks agreed to plead no contest to a single charge of attempted theft in exchange for the dismissal of the four original charges. The amended attempted theft charge related to the property stolen from Platt.

The written plea agreement is not included in the record on appeal. But at the plea hearing, the prosecutor recited the terms of the plea agreement to include payment of "restitution to the *victims*." (Emphasis added.) Defense counsel agreed the prosecutor's recitation of the plea agreement was accurate. Eubanks also personally confirmed the plea agreement was as described by the prosecutor and he was satisfied with the plea agreement.

At sentencing, the prosecutor read a statement from Platt about the losses he incurred as a result of the theft. The prosecutor advised the court the owner of Ditch Diggers "also conveyed that this theft of the chainsaws and other property cost them significant downtime, so there was a direct impact on the parties because of the defendant's crimes." The prosecutor reiterated "how this crime did impact the *victims*," and specifically stated Eubanks had agreed to pay restitution under the plea agreement, separately identifying the value of Platt's and Ditch Diggers' unrecovered stolen property. (Emphasis added.)

In response, defense counsel advised the district court Eubanks wanted a hearing on the amount of restitution. Notably, counsel did not specifically challenge the amount of restitution owed to Ditch Diggers or otherwise allege that Eubanks should not pay

17

restitution to Ditch Diggers. Rather, counsel stated that "it's a very large amount of money and my client is entitled to justification by the *parties* involved as to *their* losses." (Emphases added.) The prosecutor said that if a restitution hearing were held, she would call two witnesses to testify about the value of the stolen property. Although the prosecutor did not identify the witnesses by name, it is clear from the context of the prosecutor's statement she was referring to Platt and a representative of Ditch Diggers. When Eubanks later decided to forgo a restitution hearing and proceed with sentencing, he agreed the amount of restitution requested by the State was not in question because he was not contesting it.

Without a written document detailing the plea bargain, the best evidence of what the parties intended is their words—and in Eubanks' case, silence—at the district court. The State recited the plea bargain using the word victims in the plural. Eubanks affirmed this recitation, saying it matched the written copy he had. He never objected, expressed confusion, or asked questions about the prosecutor's word choice. At sentencing, when the State revisited restitution, Eubanks again remained silent. He never indicated, either personally or through his attorney, that he did not believe he needed to pay Ditch Diggers as part of the plea agreement. No one in the courtroom expressed any ambiguity on this point. Based on the record, the parties understood the plea agreement included restitution to Ditch Diggers and acted in accordance with that understanding. And Eubanks' remarks about possibly wanting a restitution hearing concerned the *value* of the property rather than the *identity* of the person owed. Eubanks' continued silence at these hearings establishes he understood that despite only pleading to a single charge, he agreed to pay restitution to all of his victims.

18

Based on the analysis above, we

- affirm the panel's decision concluding the district court's restitution order did not result in an illegal sentence,
- affirm the panel's decision concluding the terms stated orally on the record at the plea hearing included an agreement to pay restitution for Ditch Diggers' loss, and
- reverse the panel's remand order directing the district court to issue a new journal entry providing that the payment of restitution was to be a condition of Eubanks' postrelease supervision.

Judgment of the Court of Appeals affirming the district court and remanding the case with directions is affirmed in part and reversed in part. Judgment of the district court is affirmed.