NOT DESIGNATED FOR PUBLICATION

No. 128,589

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN ZARINEGAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Morris District Court; SUSAN C. ROBSON, judge. Submitted without oral argument. Opinion filed June 26, 2026. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Sean Zarinegar pleaded guilty to two counts of employing an unregistered agent, stemming from fraudulent stock sales by his Arizona-based real-estate companies to two Kansas residents. Zarinegar agreed as part of his plea that he would pay restitution for all the stock the Kansas couple had purchased, up to $235,500. At sentencing, the parties agreed that the district court should order restitution for all stock the couple currently held, but they offered competing arguments on the current value of the stock. The court took the matter under advisement and, with the parties' full

understanding, entered a restitution order a week later, ordering Zarinegar to pay $202,500 in restitution.

Zarinegar now appeals, challenging various aspects of the court's jurisdiction over his conduct and restitution order. He argues that the district court lacked jurisdiction to convict him because his criminal acts—employing the unregistered agent—took place in Arizona, not Kansas. He also argues that the restitution order was invalid because the court issued the order after the sentencing hearing and the total restitution amount related to more than just the crimes of conviction. After carefully considering the record on appeal and the parties' arguments, we are unpersuaded by these arguments and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Phyllis and Richard Visser, residents of Herington, owned a home in Overland Park. In February and March of that year, the Vissers negotiated to sell their Overland Park home to Performance Realty Management (PRM)—an Arizona company that acquired, rehabilitated, and resold properties and managed rental properties. Zarinegar was PRM's manager and negotiated the transaction. He initially offered to purchase the Vissers' home for $385,000. But he later revised the offer to $77,000 in cash and 8.67 Class A Units of ownership interest in PRM. The Vissers accepted, believing the total purchase price of the package to be valued at $207,000.

In late May 2016, the Vissers received a call from Jack Combs, another PRM employee, about purchasing additional interest in PRM; they purchased 2.5 Class A Units for $37,500.

At the same time, Zarinegar also managed American Housing Income Trust (AHIT), a company similar to PRM. In August 2016, PRM and AHIT entered a stock

2

exchange-and-restructuring agreement, converting all PRM units to AHIT stock. Through this restructuring, the Vissers received 110,333 shares of AHIT stock. The Vissers then purchased an additional 10,000 shares of AHIT stock at $3 per share. In February 2017, they purchased 40,000 more shares for $40,000—bringing their total holdings to 160,333 shares of AHIT stock. In March 2017, AHIT entered a stock exchange agreement with a company called IX Biotechnologies, Inc. (also known as Corix Bioscience or Corix), converting the Vissers' AHIT stock to Corix stock.

After the Corix conversion, the Kansas Securities Commissioner's Office contacted the Vissers about their transactions with PRM and AHIT. An investigating agent discovered that Zarinegar and Combs each had regulatory and disciplinary histories: Zarinegar had received cease-and-desist orders from the securities commissions of Alabama and Kansas, and Combs had received a permanent cease-and-desist order from Kansas. These orders prohibited Zarinegar and Combs from "offering or selling securities in the State of Kansas unless they are registered to do so or unless they can prove an exemption from registration." Neither PRM nor AHIT was registered in Kansas. The Vissers had no knowledge of these cease-and-desist orders and did not know that Zarinegar and Combs were not registered to offer or sell stock in the state.

In January 2022, the State charged Zarinegar with 15 counts of securities crimes: 4 counts of securities fraud; 4 counts of selling unregistered securities; 3 counts of employing an unregistered agent to transact business in Kansas; and 4 counts of violating a cease-and-desist order issued by the Kansas Securities Administrator. In July 2024, Zarinegar entered *Alford* pleas to two counts of employing an unregistered agent to transact business in Kansas. See *North Carolina v. Alford*, 400 U.S. 24, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Case*, 289 Kan. 457, 460, 213 P.3d 429 (2009) ("An *Alford* plea is a 'plea of guilty to the charge without admitting to the commission of the offense.'").

3

The plea agreement stated that Zarinegar would "pay full restitution of up to $235,500 to Phyllis Visser." In exchange for the plea, the State agreed to dismiss the remaining charges and recommend concurrent terms of probation that could be served in Arizona, where Zarinegar was facing federal securities charges.

The district court conducted a sentencing hearing in December 2024. At the beginning of the hearing, the court generally discussed how it would handle the questions before it—the appropriate sentence and the amount of restitution. The substance of this discussion does not appear in the sentencing transcript. But it is clear from the transcript that the court and parties generally discussed how it would proceed: The court would impose the controlling sentence and decide any special terms of probation, if applicable, in open court during the hearing. (This was especially important because federal agents had transported Zarinegar to Kansas for the hearing and planned to return him to Arizona; Zarinegar had previously indicated his wish to return to Arizona immediately after the hearing.) The parties would then present argument regarding the appropriate restitution. Given the complexity of that issue, the court would take the amount of restitution under advisement and issue a written restitution order within two weeks. The court explained that the filing of the restitution order would complete the sentencing and start the 14-day timeframe for appealing the court's decision.

Consistent with this course of action, the district court first considered questions relating to the appropriate sentence and potential probation, ultimately sentencing Zarinegar to concurrent 12-month prison terms with 12 months' postrelease supervision, and then suspending those sentences and imposing 24 months of probation.

The court then turned to the appropriate restitution for Zarinegar's actions. The State presented evidence that the Vissers had purchased $235,500 worth of AHIT stock and that, following Richard Visser's death in 2019, Phyllis Visser sold $33,000 worth of the stock. The State thus requested $202,500 in restitution—the value of the stock

4

remaining. Zarinegar did not dispute that he should pay restitution for the remaining stock. But he argued that the stock's value had been misrepresented and that its illiquidity did not render it worthless. In other words, he argued that the stock could be worth less than $202,500. But he did not offer any evidence specifically relating to its value.

The court took the restitution amount under advisement, instructing the parties it would issue a written restitution order within two weeks. One week later, the court issued a written decision directing Zarinegar to pay $202,500 in restitution.

DISCUSSION

Zarinegar now brings two broad challenges on appeal. He first argues that Kansas courts lack jurisdiction over his case entirely, because the criminal conduct that led to his convictions—employing Combs, who was not registered to offer or sell stock in Kansas—occurred in Arizona. He then argues the district court's restitution order was erroneous and requires reversal, challenging the method the court used for deciding restitution (issuing a written restitution decision rather than deciding restitution from the bench) and the sufficiency of the evidence supporting the restitution amount.

1. *The district court had jurisdiction over Zarinegar in Kansas.*

Zarinegar argues the district court lacked jurisdiction to convict him for employing an unregistered agent to transact business in Kansas because his conduct—employing Combs—took place entirely in Arizona. The State responds that Zarinegar's acts had a connection to this state because Zarinegar employed Combs to sell securities *in Kansas* on Zarinegar's behalf even though Combs was not registered to do so.

Subject-matter jurisdiction is the power of a court to hear and decide a particular type of action. Because subject-matter jurisdiction concerns the legal authority of a court

to hear a case or claim, it can be raised at any time throughout the case, including for the first time on appeal. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

Kansas district courts derive their jurisdiction from the Kansas Constitution, which states that district courts have jurisdiction "as may be provided by law." Kan. Const. art. 3, § 6(b). Relevant here, K.S.A. 21-5106(a) defines the territorial jurisdiction of Kansas courts in criminal cases, stating that a person is subject to prosecution and punishment under Kansas law if:

> "(1) The person commits a crime wholly or partly within this state;
> "(2) being outside the state, the person counsels, aids, abets or conspires with another to commit a crime within this state; or
> "(3) being outside the state, the person commits an act which constitutes an attempt to commit a crime within this state."

A crime is committed partly within Kansas when an act that is "a constituent and material element of the offense," "a substantial and integral part of an overall continuing criminal plan," or "the proximate result of such act" occurs in Kansas. K.S.A. 21-5106(b)(1)-(3).

Our Supreme Court has construed "proximate result" in this context to mean that "there must be a direct connection or nexus between the defendant's act or acts outside Kansas and the result in Kansas." *State v. Rozell*, 315 Kan. 295, 301, 508 P.3d 358 (2022). Thus, K.S.A. 21-5106 affords a court jurisdiction over a crime that "causes an effect or consequence in Kansas close enough in time or cause to be a proximate result." 315 Kan. at 304. And a court may have jurisdiction "even if the statutory language of the charged crime did not consider the result that occurred in Kansas." 315 Kan. at 304.

Applying that standard, the *Rozell* court held that a defendant's submission of a fraudulent insurance claim to a Kansas insurance office—even though the defendant lived in Missouri and submitted the claim from Missouri—caused proximate results in Kansas. 315 Kan. at 306-07. The court found that the defendant's actions "caused the insured [the defendant's father, who lived in Kansas] and State Farm [which conducted business in Kansas based on a Kansas insurance policy] to expend resources during an investigation of the allegedly fraudulent claim." 315 Kan. at 307.

Zarinegar's convictions rest on K.S.A. 17-12a402(d), which states it is a crime for a "broker-dealer, or an issuer engaged in offering, selling, or purchasing securities in this state, to employ or associate with an agent who transacts business in this state on behalf of broker-dealers or issuers unless the agent is registered," subject to limited exceptions that do not apply here. Zarinegar contends the proximate-cause nexus is absent, arguing that the Vissers' losses—and thus the harm in Kansas—resulted from the devaluation of AHIT stock following its conversion to Corix—not from Zarinegar's employment of Combs. We disagree.

Contrary to Zarinegar's assertions, K.S.A. 17-12a402(d) does not require those employing unregistered agents to inflict harm upon a buyer. Rather, it criminalizes a broker's employment of an unregistered, nonexempt agent who transacts business in the state on behalf of that broker. Thus, the crime is the act of employment itself when the person employed is not authorized to conduct stock transactions in Kansas; it does not require that victims like the Vissers suffer any harm. Accord *Rozell*, 315 Kan. at 304 (observing that the State charged the defendant "with crimes that do not necessarily require someone, or something, suffer harm").

The evidence shows that Combs was paid $166,213 from the bank account of one of Zarinegar's affiliated companies during the Vissers' transactions. The investigating agent testified at the preliminary hearing that Combs and Zarinegar worked together at

PRM and AHIT and that Zarinegar had said they "worked together." Combs' job was "to find and call investors." Neither Zarinegar nor Combs was registered with the State of Kansas to offer or sell securities.

Zarinegar's employment of Combs—an unregistered, nonexempt agent who sold securities in Kansas on behalf of Zarinegar's companies—was a "constituent and material element of the offense" and "cause[d] an effect or consequence in Kansas close enough in time or cause to be a proximate result"—selling securities in Kansas, to Kansas residents, as an unregistered agent on Zarinegar's behalf. See 315 Kan. at 304. The district court thus had territorial jurisdiction to enter judgment against Zarinegar for his two convictions.

    2.  *The district court's restitution order is valid.*

Zarinegar next challenges the district court's restitution order, urging its reversal for two reasons. He argues that the restitution order is void because the court announced the restitution amount in a written order a week after sentencing, not from the bench at the sentencing hearing. He also argues that the amount of restitution ordered was erroneous because it sought to compensate the Vissers for their losses stemming from all charged crimes, including for charges that had been dismissed as part of Zarinegar's plea agreement.

*Authority to issue the written restitution order*

We first consider Zarinegar's challenge to the process the district court employed when issuing its restitution order. Zarinegar did not challenge this process at sentencing; instead, our review of the record demonstrates that all parties were aware of the manner in which the court intended to proceed with the sentencing hearing and its restitution decision.

8

This process—holding a restitution hearing and then issuing a written decision a few days later—sought to balance several complicating factors: The parties acknowledged at the plea hearing and again at the sentencing hearing that the question of restitution was more complex in this case, as it involved the valuation of stock. And although Zarinegar repeatedly requested that he not be required to attend the restitution hearing in person, the court nevertheless ordered Zarinegar to attend the sentencing in person to allow him to fill out paperwork relating to his sentence that could then be transferred to authorities in Arizona.

Originally, the parties sought to address these complications by conducting the evidentiary portion of the restitution hearing before sentencing via Zoom, which would have allowed the court to announce its restitution decision later in open court. But Zarinegar filed a pro se motion to continue that hearing, asserting he had not received discovery relating to restitution from his attorney. Thus, at the parties' joint request, the court continued the restitution hearing to the same day as the full sentencing hearing.

Despite this history, Zarinegar now argues on appeal that the district court's restitution order is void because the court did not announce its restitution order in open court, but rather did so in a written order a week after sentencing. In response, the State argues that all the parties were aware that the district court would be issuing a written order to determine the amount of restitution, which was appropriate given the factual circumstances in this case.

"A sentence is effective when pronounced from the bench." *State v. Johnson*, 320 Kan. 246, 248, 564 P.3d 782 (2025). Restitution is part of a criminal defendant's sentence and must be ordered with the defendant present in open court unless the defendant waives that right. K.S.A. 22-3424; see *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). Once a district court sentences a defendant, the court loses jurisdiction to modify

9

that sentence unless the sentence is illegal or the modification is needed to correct "'arithmetic or clerical errors.'" *State v. Lamia-Beck*, 318 Kan. 884, 886, 549 P.3d 1103 (2024).

When a court is unable to determine the appropriate restitution amount at the initial sentencing hearing, the court may retain jurisdiction to resolve the restitution question at a later time. To do so, the court must make "'an explicit and specific order of continuance for the purpose of determining the amount of restitution.'" *Johnson*, 309 Kan. at 996 (quoting *State v. Hall*, 298 Kan. 978, 987, 319 P.3d 506 [2014]). Absent such an order, the court loses the ability to impose restitution after the sentencing hearing concludes. *Johnson*, 309 Kan. at 996.

In the past, the Kansas Supreme Court had held that no "'magic words'" were required to continue a sentencing hearing for this purpose. *State v. Frierson*, 298 Kan. 1005, 1021, 319 P.3d 515 (2014) (quoting *State v. Cooper*, 267 Kan. 15, 17-19, 977 P.2d 960 [1999]). Thus, once the hearing was continued, the district court had the authority and discretion to enter a subsequent restitution order without a second hearing. But since our Supreme Court's decision in *Hall* in 2014, the court has instructed that "if a district judge is in need of additional information to set restitution or decide any other aspect of the sentence to be handed down, the judge should explicitly order a continuance or bifurcation of the hearing." *Frierson,* 298 Kan. at 1021 (handed down the same day as *Hall*).

The district court in this case did not explicitly bifurcate the sentencing and restitution hearings. But the court and parties discussed the procedure the court planned to follow with regard to its restitution decision, and no one objected to this course. Indeed, when it adopted *Hall*'s bright-line rule requiring explicit statements, the Kansas Supreme Court indicated that there may be circumstances when the "the spirit, if not the letter, of the procedure" set forth in *Hall* could still be satisfied in the absence of an

explicit order of continuance. *Frierson*, 298 Kan. at 1021. For example, in *Frierson*, the court explained that the spirit of the rule set forth in *Hall* was met when

- "everyone involved at the time knew that sentencing had not yet been completed";

- "the judge explicitly held open jurisdiction";

- "the parties agreed on a 30–day extension"; and

- "the order was signed by defense counsel and entered within the planned time frame." *Frierson*, 298 Kan. at 1021.

Here, the parties discussed at the plea hearing whether to hold the sentencing and restitution hearings separately and agreed to hold them together. At the combined hearing, the State presented evidence establishing the restitution figure of $202,500 based on the unsold Corix stock the Vissers still held. Zarinegar argued the restitution amount could not be clearly determined because the Corix stock "absolutely has value" in that "it remains in equity." Yet Zarinegar acknowledged that he should pay *some* restitution and proposed a payment plan of $300 per month; he also asked the court to order that any payments made to Phyllis Visser as part of the federal case in Arizona reduce his restitution in this case. After hearing evidence and the parties' arguments, the district court explained to the parties: "[A]s I intimated to you both before, I'm going to take this under advisement. I just want to do a little reading through these and then I will just issue a written opinion as to the amount of restitution." The parties agreed to this arrangement, and Zarinegar's counsel acknowledged that restitution would be imposed and that the restitution order would be the final order of the court subject to appeal.

These facts are akin those discussed by the *Frierson* court. All parties understood the district court was taking the matter under advisement, and Zarinegar did not object or assert a right to hear the court announce the restitution amount in person. The parties also

11

understood that the time to file a notice of appeal would not begin to run until after the restitution order was issued, even though Zarinegar filed a premature notice of appeal before the court's order was filed. Under these circumstances, we find that the procedure employed by the district court satisfied the spirit of *Hall*, and thus the court retained the ability to enter its restitution order.

*The amount of restitution*

Zarinegar also argues the district court erred in ordering restitution encompassing all counts charged—including for charges the State dismissed. The State responds that Zarinegar expressly consented to paying restitution for all transactions charged in the complaint when he agreed to the terms of the plea agreement.

The scope of permissible restitution is governed by statute. K.S.A. 21-6604(b)(1) requires that a court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 21-6607(c)(1) similarly requires that courts include the payment of restitution as part of any approved probation plan.

The Kansas Supreme Court has construed these provisions as establishing an "essential, statutorily mandated requirement that the loss be caused by, not merely connected to, the crime of conviction." *State v. Dexter*, 276 Kan. 909, 918, 80 P.3d 1125 (2003). A restitution order should therefore only include "losses or damages caused by the crime or crimes for which the defendant was convicted *unless, pursuant to a plea bargain, the defendant has agreed to pay for losses not caused directly or indirectly by the defendant's crime*." (Emphasis added.) 276 Kan. at 919. Thus, Kansas law does not bar a district court from considering the plea agreement in its restitution order. See *State v. Eubanks*, 316 Kan. 355, 368, 516 P.3d 116 (2022) (holding defendant properly ordered

to pay restitution for dismissed charges where plea agreement promised restitution to multiple victims).

The State charged Zarinegar with 15 counts of securities-related offenses arising from four transactions with the Vissers. Zarinegar ultimately pleaded guilty to two counts of employing an unregistered agent to transact business in Kansas, and the State agreed to dismiss the remaining counts. But the plea agreement stated: "Sean Zarinegar agrees to pay full restitution of up to $235,500 to Phyllis Visser. This amount will be the subject of a Kansas restitution order." At the plea hearing, the State confirmed the agreement reflected "the full amount of all the transactions . . . Mr. Zarinegar has agreed to pay up to that amount." Zarinegar acknowledged: "That's what I understand." And although Zarinegar contested the value of the Corix stock at the sentencing hearing, he never argued that he should not be responsible to pay restitution for less than all of the remaining shares.

We find that the written terms of the plea agreement, Zarinegar's acknowledgment at the plea hearing, and his conduct at the restitution hearing all show that he agreed to pay restitution for the full value of Phyllis' purchased stock. Given this agreement, we need not examine whether Visser's losses were caused by the actual crimes of conviction.

We affirm the district court's restitution order.

Affirmed.

13