IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,759

STATE OF KANSAS,
*Appellee*,

v.

BECKY ANNE WILSON,
*Appellant.*

SYLLABUS BY THE COURT

1.

     If a defendant is ordered to pay restitution along with serving probation, K.S.A. 21-6608(c)(7) permits extending the probation for as long as restitution remains unpaid.

2.

     K.S.A. 21-6604(b)(1)'s provision that "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime" has two considerations: (a) damage or loss, and (b) causation.

3.

     K.S.A. 21-6604(b)(1) permits a district court to award monetary interest as part of restitution when evidence shows it is a "damage or loss caused by the defendant's crime."

     Review of the judgment of the Court of Appeals in an unpublished opinion filed June 30, 2023. Appeal from Norton District Court; PRESTON PRATT, judge. Oral argument held February 1, 2024. Opinion filed July 26, 2024. Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and vacated in part.

1

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: The State prosecuted Becky Anne Wilson for financial theft from her employer. She pled guilty to three felonies carrying statutory probation terms of 24, 18, and 12 months. The district court, however, sentenced her to 24 months' probation on each conviction and ordered full restitution with "interest on [the restitution amount] at the rate that would apply to a civil judgment." Twenty-three months into her probation, the court revoked it and ordered her to serve each felony's underlying sentence consecutively. She appealed, arguing the probations for the two lower-level felonies could not be revoked because she had completed their shorter statutory terms. She also challenged the order to pay interest. A Court of Appeals panel agreed with her. *State v. Wilson*, No. 124,759, 2023 WL 4284960, at *10 (Kan. App. 2023) (unpublished opinion). The State seeks our review. We reverse in part and affirm in part.

On the probation issue, we reverse the panel and affirm the district court. We hold the district court properly extended Wilson's probation until she fully paid her restitution obligation. This means the court had jurisdiction to revoke the probation on each conviction and impose the applicable prison terms. On the interest challenge, we affirm the panel on a different rationale and vacate that portion of the district court's order. We hold K.S.A. 21-6604(b)(1) permits monetary interest as part of restitution when the evidence shows the damage or loss caused by a defendant's crime requires it. But the

2

district court here never made any findings supporting that required causal connection, so an error of fact occurred and the court abused its discretion.

FACTUAL AND PROCEDURAL BACKGROUND

By manipulating its accounting system, Wilson stole $65,864 from Valley Hope Association and attempted to steal another $24,650. She submitted fake invoices payable to a Missouri company providing services to Valley Hope that she would authorize. Once approved, she changed the invoice's address from the Missouri company to a Kansas company she had created with an identical name. She would deposit the checks into her Kansas company's bank account and then transfer the money to her personal account. She pled guilty to theft by deception (a level 7 felony), making a false information (a level 8 felony), and attempted theft by deception (a level 9 felony). As part of her plea, she agreed to pay Valley Hope $65,864 in restitution.

At sentencing, the court determined Wilson's criminal history score to be F. For the primary offense of theft by deception (Count No. 1), it imposed the presumptive 7-F sentence with probation for 24 months with an underlying prison term of 18 months. The court's order provided:  "The conditions of your probation will be those that are set forth on the Presentence Investigation Report." That PSI included a sheet of standard probation terms used by the 17th Judicial District's Local Rules including "[t]he term of probation shall automatically continue without further court order as long as the amount of restitution ordered remains unpaid."

For the secondary counts, the court imposed consecutive presumptive 8-I and 9-I sentences. On the count for making a false information, the court "granted probation for a period of . . . 24 months, which is the same period as Count No. 1," with an underlying eight-month prison term. And on the attempted theft by deception, the court granted

3

probation of 24 months subject to "the same terms and conditions as Count 1" with an underlying six-month prison term. Neither the sentencing order from the bench nor the journal entry contain factual findings supporting the two extended 24-month probation terms.

As for restitution, Valley Hope requested in its victim impact statement "full restitution, with interest at a market rate." The court ordered Wilson pay $65,865 plus "interest . . . at the rate that would apply to a civil judgment" to Valley Hope. The court clerk applied a 12% interest rate, although no clear rationale explains where the clerk got that rate. *Wilson*, 2023 WL 4284960, at *12 (Atcheson, J., concurring) ("For reasons that aren't clear from the record, the clerk of the district court computed the interest at 12 percent a year, a fixed rate applicable to money judgments in Chapter 61 actions. See K.S.A. 16-204[e][2].").

About 23 months after sentencing, the State moved to revoke Wilson's probation alleging multiple violations of its terms. The district court accepted her stipulations about those violations, revoked probation, and imposed the original 32-month prison sentence, which included the combined 14 months for the secondary counts. At that time, she had paid $6,549.50 towards costs and restitution.

On appeal, the panel held the secondary convictions' probation terms and the imposition of interest illegally exceeded statutory limits. *Wilson*, 2023 WL 4284960, at *10. It determined that although K.S.A. 21-6608(c)(7) provides "the period may be continued as long as the amount of restitution ordered has not been paid," the district court overstepped its authority by extending Wilson's probation until she fully paid her restitution. To explain, the panel provided three reasons. First, the record is unclear whether the district court affirmatively advised her of that possibility. Second, the court's conduct showed a lack of intent to follow subsection (c)(7). Third, the standard probation

4

terms in the 17th Judicial District's Local Rules conflict with subsection (c)(7). *Wilson*, 2023 WL 4284960, at *5-6.

As for restitution, the panel majority heavily weighed the district court's statement that it awarded "'interest *on*'" the amount of restitution "not *as part of* the restitution." *Wilson*, 2023 WL 4284960, at *8. In a concurrence, Judge Atcheson noted "a different, though tangentially related, issue" of "[w]hether restitution may sometimes include a component for a demonstrable loss of return on investment attributable to the money the defendant has unlawfully taken from the victim." 2023 WL 4284960, at *12. He observed that "arguably, a full restitution award should include an amount for the investment loss," but Valley Hope made no such request. 2023 WL 4284960, at *12.

The State petitioned for review challenging the panel's adverse holdings, which we granted. Our jurisdiction is proper. K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

MOOTNESS

As oral argument approached, the State filed a Notice of Change in Custodial Status advising that Wilson had satisfied her prison sentence and postrelease supervision period. Even so, the State urged we resolve the issues despite any mootness concerns because they are capable of repetition and concern matters of public importance. Wilson's counsel agreed at oral argument.

Mootness occurs when circumstances, such as completing a sentence, would render a judicial decision ineffectual to a party's vital rights. *State v. Roat*, 311 Kan. 581, 596, 466 P.3d 439 (2020). Wilson completed her prison sentence and post-release

5

supervision after we granted the petition for review, so we need to consider the matter. Courts review mootness questions de novo. 311 Kan. at 590.

*Discussion*

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight*, 292 Kan. 776, 778, 257 P.3d 339 (2011). A case is moot after a clear and convincing showing "that the actual controversy has ended, that the only judgment that could be entered would be ineffectual for any purpose, and that it would not have an impact on any of the parties' rights." *Roat*, 311 Kan. 581, Syl. ¶ 1.

Under this general rule, the probation term issue here is moot because Wilson completed her sentence, but the interest question persists because the restitution remains unpaid. See K.S.A. 22-3504(a) ("The court may correct an illegal sentence at any time while the defendant is serving such sentence."); *Roat*, 311 Kan. 581, Syl. ¶ 6. ("In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of his or her sentence."); *State v. Eubanks*, 316 Kan. 355, 361, 516 P.3d 116 (2022) (providing restitution is part of a defendant's sentence). All agree Wilson had only paid $6,549.50 towards costs and restitution, which increased because of interest from the initial $65,865 award to $75,655.49 by the time the State moved to revoke probation. This means the interest issue is in controversy as the State concedes the restitution award remains on the books, along with any potential consequences associated with it.

But even when we might consider an issue moot under the general rule, a court may still consider cases "that raise issues that are capable of repetition and present concerns of public importance." *Roat*, 311 Kan. at 590. This is because mootness is a

6

prudential doctrine in Kansas, not a jurisdictional bar. *Roat*, 311 Kan. at 591. So once there is "a prima facie showing of mootness, the burden shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies." *Roat*, 311 Kan. 581, Syl. ¶ 7. And "[a] case does not become moot simply because a defendant completed his or her sentence." *State v. Yazell*, 311 Kan. 625, 632, 465 P.3d 1147 (2020).

The State contends both issues here are capable of repetition and raise concerns of public importance, but we need only apply the mootness exceptions to the probation question.

The question of whether a district court can continue probation while restitution is unpaid is an issue that can easily repeat itself.

And we agree with the parties that the probation question raises concerns of public importance because courts statewide need to know "the permissible manner in which to structure" restitution and probation. See *State v. Hilton*, 295 Kan. 845, 851, 286 P.3d 871 (2012) ("[P]ublic importance means 'something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.'").

We hold the probation question meets our mootness exceptions and the interest issue is not moot, so we will decide both on the merits.

7

Wilson argues the district court exceeded its authority under K.S.A. 21-6608(c)(3)-(4) by imposing 24-month probation terms on her secondary convictions, making them illegal sentences. She contends the court lacked jurisdiction because she completed the applicable statutory maximum terms before the State's motion to revoke. The panel agreed with her. *Wilson*, 2023 WL 4284960, at \*5-7. The State argues the panel erred because K.S.A. 21-6608(c)(7) permits extending probation for the duration that restitution remains unpaid. As explained, we agree with the State.

*Standard of review*

The correct probation term for each of Wilson's secondary convictions is a statutory interpretation question over which we exercise unlimited review. See *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). And to the extent a probation term exceeds the statutory limit, it raises a question about the district court's jurisdiction to revoke it, which we also review de novo. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013). Jurisdiction may be raised at any time. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021).

*Discussion*

Wilson's primary conviction of theft by deception, a severity level 7 felony, presumptively receives a 24-month probation sentence. See K.S.A. 21-5801(a)(2), (b)(2); K.S.A. 21-6608(c)(1)(B). As for the secondary convictions, making a false information, a severity level 8 felony, permits a probation sentence of up to 18 months, and attempted theft by deception, a level 9 felony, permits a probation sentence of up to 12 months. See K.S.A. 21-5824(a) (making a false information); K.S.A. 21-5801(a)(2), (b)(2) (theft by deception); K.S.A. 21-5301 (attempt); K.S.A. 21-6608(c)(4) (probation term for making a

8

false information) and (c)(3) (probation term for attempted theft by deception). She contends that because the district court exceeded the statutory terms of probation for those two convictions, her 24-month probation term is an illegal sentence. See K.S.A. 22-3504(c)(1) (defining "'[i]llegal sentence'" as a sentence "that does not conform to the applicable statutory provision, either in character or punishment").

But the inquiry does not end there. K.S.A. 21-6608 contemplates two exceptions that can extend probation beyond the statutory term. Subsection (c)(5) permits an extension "if the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms provided in subsections (c)(3) and (c)(4)." K.S.A. 21-6608(c)(5). And subsection (c)(7) permits an extension "[i]f the defendant is ordered to pay full or partial restitution . . . as long as the amount of restitution ordered has not been paid." K.S.A. 21-6608(c)(7). Subsection (c)(7)'s extension is specifically contemplated in subsection (c)(6) which states, "[E]xcept as provided in subsection[] (c)(7) . . . the total period in all cases shall not exceed 60 months." K.S.A. 21-6608(c)(6).

It is apparent the district court here did not make the necessary findings to extend the probation terms with the particularity contemplated by subsection (c)(5). But what about subsection (c)(7)? Its language states probation *may* be continued until restitution is paid, so the judge maintains discretion to impose that extension. See K.S.A. 21-6608(c)(7).

The district court ordered Wilson's probation conditions follow the Presentence Investigation Report, including its standard provision from the local rules that the "term of probation shall automatically continue without further court order as long as the restitution ordered remains unpaid." See 17th Judicial District Rule 717 (2019). The local

9

rule simply sets out the "normal or standard conditions of probation" that may be modified as "[t]he presiding judge may impose any conditions of supervision the judge deems appropriate." And judicial districts are allowed to adopt local rules that are: "(1) clear and concise; (2) necessary for the judicial district's administration; (3) consistent with applicable statutes; and (4) consistent with—but not duplicative of—Supreme Court Rules." Supreme Court Rule 105 (2024 Kan. S. Ct. R. at 172-73). In other words, the local rule here permits—but does not require—extending probation for unpaid restitution in keeping with the statutory mandate. So, continuing probation until Wilson paid her restitution does not conflict with K.S.A. 21-6608, despite what the panel thought.

It also seems clear all parties understood probation would continue until restitution was fully paid. The panel majority observed what it saw as the record's murkiness on whether Wilson was affirmatively advised on her probation continuing. But that concern is contradicted by the court's order referencing the Presentence Investigation Report's conditions and her counsel's statements at sentencing when both the State and defense remarked on the matter. The exchange reflects:

> "[STATE]: [T]he State would ask, as per the plea agreement . . . that Restitution be assessed. . . .

> " . . . I would like at least the Court make her pay monthly payments while on probation with an order that probation can be extended. It's going to take her some time to pay off $66,000 of restitution.

> . . . .

> "[DEFENSE]: [W]e'd ask that the Court follow those recommendations. *I spoke with Ms. Wilson regarding the possibility of extending probation given the large amount of restitution. She's well aware of that.*" (Emphasis added.)

10

The court also allowed Wilson to comment before imposing sentence, and she expressed no qualms about the prior statements on extending her probation. She simply took responsibility for her actions and apologized, stating "I just want to do whatever is right here."

The panel majority relied on *State v. Baker*, 56 Kan. App. 2d 335, 429 P.3d 240 (2018), to support its statutory interpretation overturning Wilson's sentence, but *Baker* is inapplicable. It held a single unitary sentence of 24 months' probation for three convictions was an illegal sentence because K.S.A. 21-6819 requires a sentence to be imposed as to each conviction. 56 Kan. App. 2d at 338-39. But in Wilson's case, the district court did not impose a single unitary sentence. Rather, it imposed separate sentences of the same duration for each conviction.

We reverse the panel and affirm the district court. We hold the district court properly extended Wilson's probation until she fully paid her restitution obligation. And since that had not happened, the court had jurisdiction to revoke her probation and impose the applicable prison terms.

INTEREST ON RESTITUTION WITH APPROPRIATE FINDINGS

The panel majority did not explicitly answer whether K.S.A. 21-6604(b)(1) permits a district court to "impose interest on the principal restitution amount . . . to compensate a victim for any lost time-value of the stolen money." *Wilson*, 2023 WL 4284960, at *8. Rather, it focused on the court's order "to pay interest *on* [the restitution] amount," and held the court exceeded statutory bounds by attaching a supplemental cost to Wilson's restitution obligation. (Emphasis added.) 2023 WL 4284960, at *8.

11

The panel majority noted the Legislature recently amended K.S.A. 21-6604 in 2020 to correct another panel's interpretation of the statute and did not add a provision for interest on restitution. 2023 WL 4284960, at *9 (citing *State v. Roberts*, 57 Kan. App. 2d 836, 461 P.3d 77 [2018], *vacated and remanded* No. 120,377, 2020 WL 8269363 [Kan. 2020] [unpublished opinion]). The majority reasoned the Legislature knows how to require interest on judgments when it wants to do so, citing K.S.A. 16-204 (interest on civil judgments) and K.S.A. 21-5933 (interest as part of restitution for Medicaid fraud). 2023 WL 4284960, at *10.

The concurrence took a slightly different approach, agreeing with the majority's reasoning on restitution in Wilson's case, but also addressing the "different, though tangentially related, issue" of "[w]hether restitution may sometimes include a component [of interest] for a demonstrable loss." 2023 WL 4284960, at *12. Judge Atcheson concluded it can, but limited interest awards only to crimes affecting investment loss like embezzlement. He excluded interest for crimes like theft, because, in his view, the harm was limited to the stolen item's value. 2023 WL 4284960, at *12.

But there is no reason to carve out limited exceptions. The district court need only make factual findings based on the evidence that interest represents a component of the damage or loss from the crime. And on that basis, we affirm the panel on a different rationale because we hold the district court did not make the appropriate findings.

*Standard of review*

An appellate court reviews issues about a restitution award, including its amount and how it is made to the aggrieved party, for abuse of discretion. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018). Judicial discretion is abused if the judicial action at issue is (1) unreasonable, i.e., if no reasonable person would have taken the view adopted

by the court; (2) based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a conclusion of law or the exercise of discretion is based. *State v. Shank*, 304 Kan. 89, Syl. ¶ 2, 369 P.3d 322 (2016). To the extent the question requires interpreting the restitution statute, that review is de novo. *Meeks*, 307 Kan. at 816.

The first—and often only—step in statutory interpretation is to consider a statute's plain meaning from its text. See *Betts*, 316 Kan. at 197-98. Statutory interpretation considers the statute's language to ascertain the legislative intent. A statute's plain and unambiguous language governs. But when the text is ambiguous, a court considers legislative history or other statutory construction methods. *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016).

*Discussion*

We begin by reviewing the governing statute, K.S.A. 21-6604(b)(1), to determine whether the district court's interest award was permitted by the statutory text, then examine the record to consider if substantial competent evidence supports the interest award here, and finally assess whether no reasonable person would apply a 12% interest rate. If the award fails any of these questions, the court abused its discretion.

K.S.A. 21-6604(b)(1)'s provision that "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime" can be broken into two parts:  (1) damage or loss, and (2) causation. Although the "not limited to" language might suggest restitution includes other compensation, its accompanying statute K.S.A. 21-6607(c)(2) limits the remedy to only damage or loss caused by the crime. See K.S.A. 21-6607(c)(2) ("the court shall order the

13

defendant to . . . make . . . restitution to the aggrieved party for the damage or loss caused by the defendant's crime in accordance with K.S.A. 21-6604[b]"). These statutes should be interpreted together because they were enacted as part of the revised Kansas Criminal Code and are closely related. See *State v. Newman-Caddell*, 317 Kan. 251, 259, 527 P.3d 911 (2023) ("The doctrine of *in pari materia* means that statutes relating to the same matter may be read together to discern intent. . . . Courts may look to the context in which the Legislature used the language and the broader context of the entire statute to discern legislative intent. In this way, the doctrine 'can provide substance and meaning to a court's plain language interpretation of a statute.'").

Neither statute defines these components. See K.S.A. 21-6603 (definitions for Chapter 21, Article 66). Without statutory definitions, we look at the dictionary definition because we assume the Legislature intends a word to be used in its ordinary and common meaning. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 8, 834 P.2d 368 (1992). "A common dictionary definition is a good source to discern the ordinary, contemporary, and common meaning of a word." *State v. Hambright*, 318 Kan. 603, 608, 545 P.3d 605 (2024).

According to Black's Law Dictionary, damage means "[l]oss or injury to person or property" or "[b]y extension, any bad effect on something"; loss means a "disappearance or diminution of value"; and causation means "[t]he causing or producing of an effect." Black's Law Dictionary 488, 1132, 273 (11th ed. 2019). And under our caselaw, causation requires a causal link between the defendant's unlawful conduct and the victim's damages, with the consequences of criminal conduct creating "a range of possibilities for restitution." *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015). On the spectrum's easy end, "losses directly or immediately caused by criminal conduct, such as injuries to persons or property, are clearly compensable"—e.g., medical bills and the value of stolen property. 301 Kan. at 837. But on the spectrum's other end, the outcome

14

gets murkier "because the losses [are] more tangentially caused by the criminal conduct." 301 Kan. at 837. Permissible yet tangential losses include a victim's relocation expenses following a crime and an increased insurance premium after filing a theft claim. But attorney fees for advising on court procedures and preparing detailed losses caused by the crime are too tangential. 301 Kan. at 837-39.

K.S.A. 21-6604(b)(1)'s plain language requires interest when the State (or victim) proves the victim suffered a "bad effect" or "disappearance or diminution of value" and establishes a causal connection between the interest award it seeks and the defendant's crime. A court must order restitution in "the amount that reimburses the victim for the actual loss suffered." *Hand*, 297 Kan. at 738. This means restitution is not limited to fair market value, because "[a]lthough fair market value may be an accurate measure of loss in some cases, it may not be the best measure for all cases." 297 Kan. at 737. Interest may be a component of a victim's loss, especially when it represents compensation for the time value of money.

Interpreting the statute to permit interest on a proper evidentiary showing aligns with restitution's purpose to compensate victims and serve the "'rehabilitative, deterrent, and retributive goals of the criminal justice system.'" *State v. Arnett*, 314 Kan. 183, 191-92, 496 P.3d 928 (2021). Restitution is "rehabilitative because it forces the defendant to confront, in concrete terms, the harm his actions have caused," it is a precise deterrent because of "the direct relation between the harm and the punishment," and it is retributive "in that it seeks to take ill-gotten gains from the defendant." *Arnett*, 314 Kan. at 192. When evidence shows a defendant's crime requires interest to be part of a restitution award, such an award serves these purposes.

15

This interpretation adheres to other state and federal court holdings. The Kentucky Supreme Court addressed this exact question in *Hearn v. Com.*, 80 S.W.3d 432, 434-35 (Ky. 2002):

> "The argument that there is no express statutory authority for the imposition of interest is without merit here. The courts of other states may ordain specific statutory language is necessary to require interest, see *State v. Akers*, 435 N.W.2d 332 (Iowa 1989), but that is not the case in Kentucky. Many federal and state courts have ordered interest on restitution without specific statutory language. As an example, we look to 18 U.S.C. § 3664(f)(1)(a), which is similar to our statute in that it requires restitution of the 'full' amount of the damages. *United States v. Patty*, 992 F.2d 1045 (10th Cir. 1993), and *United States v. Smith*, 944 F.2d 618 (9th Cir. 1991), upheld the payment of prejudgment interest on restitution ordered by a trial court. See also *Government of the Virgin Islands v. Davis*, 43 F.3d 41 (3d Cir. 1994) and *United States v. Rochester*, 898 F.2d 971 (5th Cir. 1990), which upheld both prejudgment and post-judgment interest on restitution orders.

> "A number of state courts have also decided that interest can be properly included in restitution even though the restitution statutes make no specific mention of interest. *People v. Law*, 459 Mich. 419, 591 N.W.2d 20 (1999), upheld the grant of interest on criminal restitution. *Dorris v. State*, 656 P.2d 578 (Alaska Ct. App. 1982), held that interest on restitution was proper 'since the purpose of the restitution statute is to make the victim whole.' For other cases allowing interest as part of restitution *see Ex parte Fletcher*, 2001 WL 306916, 849 So.2d 900; *Valenzuela v. People*, 893 P.2d 97 (Colo. 1995); *People v. Acosta*, 860 P.2d 1376 (Colo. Ct. App.1993); *Ebaugh v. State*, 623 So.2d 844 (Fla. Dist. Ct. App. 1993); *Woods v. State*, 418 So.2d 401 (Fla. Dist. Ct. App. 1982); *State v. Brewer*, 296 Mont. 453, 989 P.2d 407 (1999); *State v. Meyers*, 571 N.W.2d 847 (S.D. 1997); *Rodriguez v. State*, 710 S.W.2d 167 (Tex. App. 1986)."

We see no reason to adopt a narrow reading of "damage or loss caused by the defendant's crime" as the panel did. Its majority found comfort in K.S.A. 21-5933's explicit authorization of interest to show the Legislature knows "how to provide for

16

interest payments when that is its intention." *Wilson*, 2023 WL 4284960, at *10; see K.S.A. 21-5933 (A person convicted of Medicaid fraud may be liable for "payment of interest on the amount of any excess payments at the maximum legal rate in effect on the date the payment was made to the person for the period from the date upon which payment was made, to the date upon which repayment is made."). And the concurrence takes that reasoning a step further by deciding that permitting interest under K.S.A. 21-6604 would render K.S.A. 21-5933 superfluous. *Wilson*, 2023 WL 4284960, at *11. But K.S.A. 21-5933 limits the possible penalties to *specific* remedies, including interest, when a defendant commits Medicaid fraud, while K.S.A. 21-6604(b)(1) requires *any remedy*, including interest, *proven to be damage or loss caused by the defendant's crime*. See *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017) ("[W]e read the statutory language *as it appears*, without adding or deleting words." [Emphasis added.]).

Wilson correctly observes "there is no common law history of district courts ordering interest to accompany restitution awards," but incorrectly argues K.S.A. 21-6604(b)(1) should be limited to common-law remedies. As the concurrence notes, criminal restitution "is purely a creature of statute." *Wilson*, 2023 WL 4284960, at *11 (citing *Arnett*, 314 Kan. at 189 ["(C)riminal restitution as we know it today was not part of the common law at all in 1859."]). Our statutory language, not common law, controls.

Even so, the State's problem in Wilson's case is that the district court never made findings establishing the required causal connection, and the parties put on no evidence about the interest rate, whether it was appropriate here or what rate should apply. Instead, the court simply awarded "interest . . . at the rate that would apply to a civil judgment" based on the victim's request without any factual findings this court can review. Worse yet, a district court clerk picked 12% without discernible reasoning in the record.

17

We hold K.S.A. 21-6604(b)(1) permits interest as part of a restitution award when the evidence shows a defendant's crime requires an interest award. But we also hold the record here does not support the district court's ruling. An error of fact occurred, which means the court abused its discretion. We affirm the panel on this issue and vacate Wilson's restitution sentence as to interest for the reasons explained.

Judgment of the Court of Appeals reversing the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and vacated in part.

\* \* \*

STEGALL, J., concurring in part and dissenting in part: I dissent from the portion of today's decision finding prudential grounds to issue an advisory opinion concerning Wilson's probation revocation. Because Wilson has served her sentence, any decision we make concerning the propriety of her probation revocation can have no impact on the legal rights of the parties and is wholly advisory. As I said in my concurrence in *State v. Roat*, 311 Kan. 581, 603-04, 466 P.3d 439 (2020) (Stegall, J., concurring), mootness is a jurisdictional bar and this court does not have the constitutional authority to issue advisory opinions, no matter how important the issue may be. "[W]e do not render advisory opinions—indeed, we are not constitutionally empowered to do so . . . . When a case or controversy has ended, our jurisdiction ends." 311 Kan. at 603-04 (Stegall, J., concurring).

LUCKERT, C.J., joins the foregoing concurring and dissenting opinion.

18