NOT DESIGNATED FOR PUBLICATION

No. 127,773

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MANDALA COMMUNITY, LLC,
*Appellant*,

v.

ADAM DENTON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH JOHNSON, judge. Oral argument held March 12, 2025. Opinion filed April 18, 2025. Affirmed.

*Joshua S. Albin*, of Adams Jones Law Firm, P.A., of Wichita, for appellant.

*Bryant Barton* and *Kimberly Condon*, of Disability Rights Center of Kansas, of Topeka, for appellee.

Before MALONE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Mandala Community, LLC (Mandala), timely appeals from the district court's order dismissing its petition to evict Adam Denton while relying upon the Kansas Residential Landlord and Tenant Act (KRLTA), K.S.A. 58-2540 et seq. The district court determined Mandala was an institution exempt from the provisions of the KRLTA, and it lacked jurisdiction to proceed with Mandala's petition. Mandala argues on appeal the district court erred, asserting it is not an institution within the meaning of the KRLTA. After an extensive review of the record, we agree with the district court that Mandala is an institution exempt from the provisions of the KRLTA. We affirm.

1

In October 2023, Denton signed a "Room Rental Agreement" to live at a group home owned by Mandala. The premises was described as "a private bedroom, with a shared bathroom, kitchen, dining room, common area, and backyard and two (2) parking space(s)." The term of the rental agreement was for one year, and it required Denton to pay $420 per month in rent. Paragraph 39 of the agreement addressed "Legal Disputes" and provided: "Any legal dispute arising from this Agreement shall be resolved through the Dispute Resolution Policy, see Mandala Community, LLC Operating Policies for further information."

In February 2024, Mandala filed a petition seeking to evict Denton from its group home because of his failure to pay one month's rent and because of a violation of Mandala's house rules concerning safety restraints on his bed. Mandala petitioned for the eviction under the provisions of the KRLTA. The district court initially granted the petition and entered a writ of restitution for immediate possession following a hearing at which Denton appeared pro se. However, counsel from the Kansas Disability Rights Center entered an appearance on Denton's behalf the following day and moved to stay the writ. The motion was granted, and the district court set aside the judgment and set the matter for further hearing.

The district court subsequently held an evidentiary hearing. Mandala called its co-owner and executive director, Chelsea Jackson, as a witness. Jackson testified Mandala is a "home and community-based service residential provider for persons . . . diagnosed with intellectual and developmental disabilities." She explained Mandala is licensed through the Kansas Department for Aging and Disability Services and described Mandala's role as helping integrate its residents into the community by helping them become independent through teaching life skills. However, Jackson clarified that a resident living at Mandala is required to receive one or more of the services it provides.

On direct examination, Jackson was asked about Mandala's admission and service agreement, which stated, in relevant part: "Mandala provides residential services and . . . appropriate personal care needs . . . 'within the law, under the person-centered service plan.'" Jackson testified some of those services include providing transportation to outpatient medical care and providing assistance administering medication, if necessary. On cross-examination, Jackson admitted the services provided go beyond what is typical for an ordinary landlord-tenant relationship. Mandala admitted six exhibits into evidence during Jackson's testimony. However, none of those exhibits are in the record on appeal.

After hearing the evidence and arguments from the parties, the district court concluded Mandala was an institution within the meaning of K.S.A. 58-2541(a) and, therefore, exempt from the KRLTA. The district court then dismissed Mandala's petition because it lacked jurisdiction over the proceedings. Additional facts are set forth as necessary.

ANALYSIS

As a preliminary matter, the parties acknowledged at oral argument Denton no longer resides at Mandala, and Mandala did not request a money judgment against Denton. Accordingly, Mandala has already obtained the relief it desired as Denton is no longer living at Mandala's group home. We recognize this renders the issue moot, but the parties have asked us to address it as an issue of state-wide importance capable of repetition. See *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020) (noting exception to mootness doctrine). We agree with the parties and will address the issue on the merits.

*Standards of Review and Applicable Legal Principles*

To properly discuss the issues on appeal we must apply multiple standards of review. The district court dismissed Mandala's petition based on a finding it lacked

3

jurisdiction. Whether jurisdiction exists is a question of law subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

Here, the district court's conclusion turned on whether Mandala was an institution within the meaning of K.S.A. 58-2541(a). In part, this presents an issue of statutory interpretation, which is also a question of law subject to unlimited review. *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023). "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. [We] must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.]" *John Doe v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). If a statute does not include a specific definition for a term used therein, we look at dictionary definitions to discern the ordinary meaning of the term. *State v. Wilson*, 319 Kan. 55, 65, 552 P.3d 1228 (2024). When a statute is plain and unambiguous, we are restricted from speculating about the legislative intent behind that clear language, and we refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022).

The district court's conclusion that Mandala is an institution within the meaning of K.S.A. 58-2541(a) is essentially a factual determination. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. In making this determination, we do not reweigh evidence, resolve evidentiary conflicts, or make factual determinations. Rather, our concern is whether a relevant evidentiary basis exists to support the district court's factual findings. *Granados v. Wilson*, 317 Kan. 34, 41, 54-55, 523 P.3d 501 (2023). Put another way, we must determine (1) whether the admitted evidence or reasonable inferences fairly derived from that evidence support each of the district court's findings, regardless of any conflicting evidence; and (2) whether the

4

evidence supports all of the findings necessary to reach the ultimate conclusion without unfounded inferential leaps or assumptions.

*Discussion*

K.S.A. 58-2541 provides: "Unless created to avoid the application of this act, the following arrangements are not governed by this act." The first living arrangement exempted from the KRLTA is "[r]esidence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling, religious or similar service." K.S.A. 58-2541(a). Thus, the question we must answer is whether Mandala is an institution outside of the scope and provision of the KRLTA. See K.S.A. 58-2542.

Mandala argues the district court erred in finding it was an "institution" within the meaning of K.S.A. 58-2541(a). Its arguments are somewhat disjointed and seem to assume—often without meaningful explanation—that other Kansas statutes, Kansas administrative regulations, and federal statutes and regulations are either controlling or informative on this issue. Mandala contends we must determine the plain meaning of "institution" in K.S.A. 58-2541(a) but abruptly points to definitions found in the Adult Care Home Licensure Act, K.S.A. 39-923 et seq. See K.S.A. 39-953 (citation of the act). This is inconsistent with established principles of statutory interpretation. We must first and foremost look to the plain meaning of K.S.A. 58-2541(a). See *John Doe*, 315 Kan. at 320.

K.S.A. 58-2541 does not define "institution," nor is it a term defined in the specific statutory definitions applicable to the KRLTA as set forth in K.S.A. 58-2543. When the Legislature does not provide a specific definition for a term, we presume the Legislature intended to give the term its ordinary meaning based on its common usage. In

5

discerning the ordinary meaning and common use of a term, we look at dictionary definitions. *Wilson*, 319 Kan. at 65. Some dictionary definitions for institution include:

- "3a. An established organization or foundation, especially one dedicated to education, public service, or culture. b. The building or buildings housing such an organization. c. A place for the care of persons who are destitute, disabled, or mentally ill." American Heritage Dictionary of the English Language 909 (5th ed. 2016);
- "1 a: an established organization or corporation . . . especially of a public character b: a facility or establishment in which people (such as the sick or needy) live and receive care." Merriam-Webster Online Dictionary;
- "1. An organization or establishment for the promotion of a particular object, usually one of some public, educational, charitable, or similar purpose. 2. The building devoted to such work." The Random House American Dictionary and Family Reference Library 631 (1968); and
- "[A] significant and persistent element (as . . . an organization) . . . that centers on a fundamental human need, activity, or value . . . and is [usually] maintained and stabilized through social regulatory agencies. . . . [A]n establishment or foundation [especially] of a public character." Webster's Third New International Dictionary 1171 (1993).

K.S.A. 58-2541(a) refers to "[r]esidence at an institution . . . if incidental to . . . the provision of medical, geriatric, educational, counseling, religious or similar service." Given this context, the Legislature is referring to an institution in the sense of a place where people "live and receive care." See Merriam-Webster Online Dictionary. This definition is likewise consistent with an "establishment for the promotion of a particular object, usually one of some public, educational, charitable, or similar purpose," The Random House American Dictionary and Family Reference Library 631 (1968), and "an organization . . . that centers on a fundamental human need, activity, or value . . . and is

6

[usually] maintained and stabilized through social regulatory agencies." Webster's Third New International Dictionary 1171 (1993).

We need look no further than the dictionary definitions cited above to determine the plain meaning of "institution" as used in K.S.A. 58-2541(a). The fact "institution" is not defined in K.S.A. 58-2543 underscores the Legislature's intent to give the term its ordinary meaning based on its common usage as a place where someone can live and receive the specific care or assistance the person needs. Nothing in K.S.A. 58-2541 references any statutes or acts outside the KRLTA.

Mandala's reliance on a variety of statutory and regulatory definitions outside the KRLTA implicitly assumes the Legislature intended other statutory and regulatory schemes to govern the scope and application of the KRLTA. But such an interpretation requires us to add language not readily contained in the statute—something we should not do. *Schmidt*, 315 Kan. at 200. For example, Mandala cites the definitions for "'[i]ntermediate care facility for people with intellectual disability'" and "'[r]esidential healthcare facility'" found in K.S.A. 2024 Supp. 39-923(a)(4) and (a)(6), respectively. But K.S.A. 2024 Supp. 39-923(a) clearly states the definitions therein are for the terms "[a]s used in this act." The KRLTA is not part of the Adult Care Home Licensure Act; therefore, we are unpersuaded those statutory definitions are of any persuasive value here, given the clear legislative context of the KRLTA.

The ordinary meaning of "institution" applies to the term as used in K.S.A. 58-2541(a). And based on that plain meaning, the district court did not err in determining Mandala was an institution exempt from the provisions of the KRLTA because the evidence established residence at Mandala was "incidental to . . . the provision of medical, geriatric, educational . . . or similar service." K.S.A. 58-2541(a).

To the extent Mandala makes any arguments related to the district court's factual determinations, its points are unpersuasive. Mandala's factual arguments are largely tied to and interwoven with its argument that definitions outside the KRLTA apply in determining whether it is an institution under K.S.A. 58-2541(a). But we do not accept Mandala's definitions for institution. Nevertheless, "[w]e have a duty to question jurisdiction on our own initiative." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013). Accordingly, despite Mandala's failure to clearly address the point, we must examine whether the factual findings on which the district court relied in concluding Mandala was an institution under K.S.A. 58-2541(a) are supported by substantial competent evidence.

The evidence reflected Mandala provides its residents with care and services well beyond what is commonly furnished in a traditional landlord-tenant relationship. Jackson even admitted as much. Mandala specifically provides services to people with intellectual and developmental disabilities, including educating residents in life skills to help them live independently and integrate into the community. Those services also include "'appropriate personal care needs . . . under the [resident's] person-centered service plan.'" Some of those care needs include transporting residents for outpatient medical care and assisting with medication administration. The services Mandala provides can also be provided to people residing elsewhere in the community. Moreover, the evidence presented reflects that a resident must receive some type of assistance from Mandala to live at its group home. The evidence further reflects Denton received help with integrating into the community, activities of daily living, such as personal hygiene and verbal prompts to keep his room clean, as well as assistance with medical appointments. Thus, the evidence showed Denton residing at Mandala was incidental to him receiving medical, educational, or similar services.

Based on this evidence, the district court correctly concluded Mandala was exempt from the KRLTA because residence at its facility was "incidental to . . . the provision of

medical, geriatric, educational . . . or similar service." K.S.A. 58-2541(a). The district court noted: "Mandala gets Medicaid funding. It was referred to as a group home. The tenants at Mandala or the people that reside there have—receive more services than they would if they were in—living in a . . . traditional landlord/tenant relationship." Thus, the evidence reflected Mandala is "an organization . . . that centers on a fundamental human need, activity, or value . . . and is . . . maintained and stabilized through social regulatory agencies." Webster's Third New International Dictionary 1171 (1993). The district court further noted the dispute prompting this litigation—whether Denton's voluntary use of restraints on his bed violated Mandala's rules—demonstrated this was not an ordinary landlord-tenant relationship.

We find substantial competent evidence supports the factual findings on which the district court relied in concluding Mandala was an institution exempt from the KRLTA under K.S.A. 58-2541(a). The district court properly concluded it lacked jurisdiction because the KRLTA limits such jurisdiction "over any landlord or tenant with respect to any conduct . . .  governed by [the KRLTA]." K.S.A. 58-2542. We affirm the district court's dismissal of Mandala's eviction petition.

This result does not foreclose Mandala's options to have its residents vacate their leases; Mandala simply cannot do so under the KRLTA. The record reflects Mandala still has the option to follow the procedure provided in paragraph 39 of its own rental agreement addressing legal disputes between the landlord and any tenant arising from the agreement.

Affirmed.

                 \* \* \*


CLINE, J., concurring:  I write separately only to clarify that I interpret the exemption in K.S.A. 58-2541(a) to require both the tenant's residency at a public or private institution and that the tenant's residency at the institution be incidental to detention or the provision of medical, geriatric, educational, counseling, religious, or similar service. But I concur with the majority and district court in concluding that Adam Denton established both requirements here and therefore agree Denton's tenancy at Mandala Community, LLC, is not subject to the Kansas Residential Landlord and Tenant Act.