NOT DESIGNATED FOR PUBLICATION

No. 128,114

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAISON EDWARD TRAVELBEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Amy L. Aranda*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: Jaison Edward Travelbee conveyed threatening messages by phone to an employee of Services Offering Safety (SOS). Travelbee's threats resulted in a lockdown of the facility, which meant that the front doors to the building were locked, and entry to the building was restricted. As a result of his actions, Travelbee was convicted by a jury of aggravated criminal threat and sentenced by the district court to 60 months in prison.

1

On appeal, Travelbee first argues that the district court erred in its culpable mental state instruction to the jury. But we find the instruction was legally appropriate because it defined intentional conduct in accordance with K.S.A. 21-5415(a)(1); K.S.A. 21-5202(h); and PIK Crim. 4th 52.010.

Travelbee's second argument on appeal is that his conviction for aggravated criminal threat was not supported by sufficient evidence. He states that his charge of aggravated criminal threat required sufficient evidence of a "lock down," but no lockdown occurred because access to the SOS building was only restricted rather than prohibited. While we agree with Travelbee that the term "lock down" has not been defined under Kansas law in the context of aggravated criminal threat, we find that under the plain meaning of the term, sufficient evidence of a "lock down" may exist when access to a building is restricted. Considering the evidence in a light most favorable to the State, sufficient evidence supported Travelbee's conviction because the building was locked and entry restricted as the result of Travelbee's threats.

Finally, Travelbee challenges the district court's failure to provide the jury with a definition of the term "lock down" in the jury instructions. But the district court is not required to define commonly understood terms and the term "lock down" is readily understandable within the context of the aggravated criminal threat statute, K.S.A. 21-5415(b). Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Jaison Travelbee called the SOS office on behalf of his girlfriend, who sought assistance with changing the legal custody of her children, obtaining child support, and addressing stalking issues related to her ex-husband. SOS is an agency that assists victims of domestic violence, human trafficking, sexual assault, and stalking.

2

Cassandra Ortiz, a criminal justice coordinator at SOS, answered Travelbee's call. Ortiz informed Travelbee that SOS could not assist with child custody or child support issues and suggested that he contact Kansas Legal Services. Ortiz also explained that his girlfriend could contact SOS if she needed anything else. According to Ortiz, Travelbee was upset by that response, and stated he "knew who we were, where we were, and they knew how to take care of business and they would take care of business." The SOS worker also recalled that Travelbee stated he would take care of business by using "fireballs," though later, Ortiz stated she did not remember if Travelbee said "fireballs" or "firebombs."

Ortiz hung up on Travelbee, wrote down his number from the display on her phone, and reported the incident to her supervisor, Mary Halleran. Ortiz and Halleran then reported the incident to SOS director, Connie Cahoone. Cahoone placed SOS in a level one lockdown, which is the SOS response to a low or moderate threat. A level one lockdown includes locking the front doors of the building. Individuals seeking access to the building must call SOS for permission to enter or ring a bell outside the office. If after screening the individual is approved for entry, the person is then escorted into the building by an SOS employee.

After receiving the incident report from Ortiz and Halleran, Cahoone called law enforcement and provided the phone number of the person who had made the call. Officers called the number provided by Cahoone and reached Travelbee's voicemail. Around the same time, Ortiz viewed a video of Travelbee from his Facebook account and confirmed that Travelbee's voice was the same voice she had heard during the threatening phone call.

Officers traveled to Travelbee's location to ask him about the incident. Travelbee acknowledged speaking to Ortiz over the phone. He explained that he became upset when SOS failed to assist his girlfriend. When questioned about his threatening comments,

3

Travelbee indicated that he told SOS that they needed "to take care of business." Officers asked Travelbee about his comments concerning a fireball or firebomb, and Travelbee recalled that he stated if SOS did not take care of business, it was going to turn into a firestorm between Travelbee and his girlfriend's ex-husband. An officer observed that Travelbee remained very defensive and agitated throughout the conversation.

As a result of this incident, Travelbee was arrested and charged with aggravated criminal threat in violation of K.S.A. 21-5415(b) & (c)(2), a level 5, person felony.

The case proceeded to jury trial. At the close of evidence, outside the presence of the jury, the district court conducted a jury instruction conference. Neither party objected to the jury instructions proposed by the court, and the jury was instructed accordingly. At the conclusion of the trial, the jury found Travelbee guilty of aggravated criminal threat, and at sentencing, the district court imposed a 60-month prison sentence. Travelbee timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERRONEOUSLY INSTRUCT THE JURY ON CULPABLE MENTAL STATE?

Travelbee's first argument on appeal is that the district court erred in Instruction 11, which defined culpable mental state for the jury.

*Standard of Review*

"When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below;

4

and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

Here, since there is no issue with appellate jurisdiction or preservation, we move to the second step of the analysis to determine whether error occurred. To determine whether a jury instruction error occurred at trial, we "consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." *Hollins*, 320 Kan. at 242.

If we find error, we must determine whether that error is reversible. Because Travelbee failed to object to the jury instructions at trial, we evaluate whether the jury instructions were "clearly erroneous." To be "clearly erroneous," the instruction must be legally or factually inappropriate and we must be firmly convinced that the jury would have reached a different verdict if the erroneous instruction would not have been given. The party claiming error has the burden to show error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

*Instruction 11 was not clearly erroneous.*

We begin our analysis with an understanding of the crime of conviction. Travelbee was convicted of aggravated criminal threat under K.S.A. 21-5415(b). Aggravated criminal threat is defined as "the commission of a criminal threat, as defined in subsection (a), when a public, commercial or industrial building, place of assembly or facility of transportation is evacuated, locked down or disrupted as to regular, ongoing activities as a result of the threat." Aggravated criminal threat is different than criminal threat in that the former requires the threat cause an evacuation, lockdown, or disruption. K.S.A. 21-5415(b).

5

By its very language, the definition of *aggravated* criminal threat imports the definition of criminal threat from K.S.A. 21-5415(a). In this case, K.S.A. 21-5415(a)(1) is the applicable subsection:

"(a) A criminal threat is any threat to:

(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities." K.S.A. 21-5415(a)(1).

The definition of criminal threat includes a required culpable mental state of "intent" which is defined in K.S.A. 21-5202(h):

"A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h).

Travelbee's jury instruction challenge pertains to Instruction 11, which was based on the definition of "intent" from K.S.A. 21-5202(h):

"The State must prove that the defendant committed the crimes of aggravated criminal threat or criminal threat, as charged in Count 1, intentionally.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State, and/or cause the result complained about by the State."

Travelbee's sole challenge to Instruction 11 is that the inclusion of the language "and/or" made the instruction legally inappropriate. Specifically, Travelbee believes the inclusion of "and/or" in the instruction was erroneous because the term allowed the jury

6

to find Travelbee guilty verdict so long as Travelbee intended to (1) communicate; or, (2) place another in fear.

Instruction 11 was based on K.S.A. 21-5202(h). Travelbee acknowledges that under this statute, intent may be demonstrated by an act, a result, or both. To satisfy the element of intent, a defendant can "do the act complained about by the State, and/or cause the result. . . ." See K.S.A. 21-5202(h). But Travelbee argues that the crime of criminal threat under K.S.A. 21-5415(a) requires placing a person in fear, which is a "result." He argues that the district court erred by instructing the jury that intent could be satisfied by either doing the act and/or causing the result.

Travelbee fails to cite any legal authority directly in support of his argument. Instead, Travelbee relies on *State v. Thomas*, 311 Kan. 905, 908, 468 P.3d 323 (2020), in support of his argument that the district court's culpable mental state instruction was legally inappropriate. In *Thomas*, the Kansas Supreme Court held that the district court erroneously instructed the jury related to the culpable mental state required to commit aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(1)(A). It noted that the culpable mental state "knowingly," in the context of aggravated battery, requires the State to prove "the defendant acted when he or she was aware the conduct was reasonably certain to cause the result." The district court had erroneously instructed the jury that the "State is not required to prove that the defendant intended the precise harm or result that occurred." The court noted that the error was compounded when the district court defined "knowingly" with three alternative definitions, "only one of which required the jury to find that Thomas was aware his conduct was reasonably certain to cause the harm to the child." 311 Kan. at 908. In other words, the definition of "knowingly" used by the district court in its instructions did not follow the law. Travelbee argues that similarly, the use of "and/or" in Instruction 11 gave the jury two different methods of finding he acted "intentionally," which creates an ambiguity.

7

*Thomas* is easily distinguished. The jury instruction at issue in *Thomas* included three definitions of "knowingly," and only one of those definitions followed the law. Here, the language in Instruction 11 is based on the definition of "intent" from K.S.A. 21-5202(h). That statute clearly permits intent to be demonstrated by an act or a result or both. And Travelbee has provided no authority that requires us to depart from a plain reading of K.S.A. 21-5202(h). "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Travelbee's argument also fails to consider that appellate courts are "required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998)." *State v. Mitchell*, 269 Kan. 349, 355, 7 P.3d 1135 (2000).

In order to consider Travelbee's argument in the context of the full jury instructions, we pause to examine the elements of aggravated criminal threat that were presented to the jury in Instruction 8:

"To establish this charge, each of the following claims must be proved:

"1. The defendant threatened to commit violence and communicated the threat with the intent to place another in fear, to wit: employees of Services Offering Safety Inc.
"2. A public, commercial, or industrial building was evacuated, locked down, or disrupted as to regular ongoing activities as a result of the threat.
"3. This act occurred on or about the 26th day of September, 2023, in Lyon County, Kansas."

8

The jury was provided with the elements of the crime in Instruction 8, and the culpable mental state requirements in Instruction 11. Instruction 8 clearly instructed the jury that the State was required to prove that Travelbee "communicated the threat with the intent to place another in fear." Instruction 11 properly and fairly stated the law because it was based on the plain language of K.S.A. 21-5202(h). Even if the "and/or" language was not precise, considering the instructions as a whole, the jury could not have been reasonably misled. *Mitchell*, 269 Kan. at 355.

We also note that Instruction 11 utilized the language found in PIK Crim. 4th 52.010. As acknowledged by the Kansas Supreme Court, PIK instructions "'bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). Generally, "if a court follows the PIK instructions, more than likely the instruction will be legally correct, not because of any independent legal significance of the pattern instruction, but because the committee usually writes an instruction that accurately reflects the law." *State v. Wimbley*, 313 Kan. 1029, 1031, 493 P.3d 951 (2021).

We find that the "and/or" language utilized by the district court in Instruction 11 was authorized by K.S.A. 21-5202(h), and Travelbee has provided no legal authority that persuades us to disregard that language. We also find that Instruction 11, when read along with Instruction 8, could not have reasonably misled the jury. *Mitchell*, 269 Kan. at 355. "Jurors are presumed to follow the instructions they receive in the district court." *State v. Mattox*, 305 Kan. 1015, Syl. ¶ 2, 390 P.3d 514 (2017). Travelbee has failed to prove that Instruction 11 was legally inappropriate.

Finally, even if we were to find that the "and/or" language in Instruction 11 was legally inappropriate, Travelbee has failed to meet his burden of proof to show that the error requires reversal. *State v. Holder*, 314 Kan. 799, 807, 502 P.3d 1039 (2022). To meet his burden, Travelbee must prove that the removal of the "and/or" language from

the jury instruction "would" have changed the verdict. *State v. Berkstresser*, 316 Kan. 597, 605-06, 520 P.3d 718 (2022); see also K.S.A. 22-3414(3).

Here, the evidence against Travelbee was significant. Ortiz testified that Travelbee called her at SOS and made repeated statements that he "knew how to take care of business" and would take care of business through the use of fireballs or firebombs. Ortiz wrote down Travelbee's phone number and reported the incident to her supervisor and director. The director placed the building on lockdown and notified authorities. The authorities corroborated Travelbee's involvement by calling his phone and interviewing him. Ortiz confirmed it was Travelbee who made the call by listening to a video posted to his Facebook account. The jury considered this evidence in reaching its decision, and Travelbee has failed to demonstrate how the absence of the language "and/or" in Instruction 11 would have changed the jury's verdict. Instruction 11 was not clearly erroneous.

## DID SUFFICIENT EVIDENCE SUPPORT TRAVELBEE'S CONVICTION FOR AGGRAVATED CRIMINAL THREAT?

Travelbee next argues that his conviction for aggravated criminal threat was not supported by sufficient evidence.

*Standard of Review*

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

10

"This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

*Sufficient evidence supports the conviction.*

A conviction for aggravated criminal threat under K.S.A. 21-5415(b) requires the specific element that "a public, commercial or industrial building, place of assembly or facility of transportation is evacuated, locked down or disrupted as to regular, ongoing activities as a result of the threat." K.S.A. 21-5415(b). Travelbee argues that even when viewed in a light most favorable to the State, there was insufficient evidence that SOS was placed in a "lock down."

Travelbee points out that K.S.A. 21-5415 does not define "lock down" and no Kansas appellate court has interpreted that term in the context of aggravated criminal threat. Travelbee correctly asserts that under such circumstances, it is appropriate to utilize the plain meaning of the term in our sufficiency analysis. *State v. Hambright*, 318 Kan. 603, 610, 545 P.3d 605 (2024). Travelbee provides multiple definitions of the term "lock down" in his brief. First, from Merriam-Webster Dictionary: "an emergency measure or condition in which people are temporarily prevented from entering or leaving a restricted area or building (such as a school) during a threat of danger." Merriam-Webster Online Dictionary. Second, from Webster's New World Dictionary: "[A]ny emergency security procedure in which authorities prohibit persons from leaving a building, compound, etc." Webster's New World College Dictionary 856 (5th ed. 2014). Third, from Oxford Dictionary: "a state of isolation, containment, or restricted access, usually instituted for security purposes or as a public health measure; the imposition of this state." Oxford English Online Dictionary. After providing these three definitions, Travelbee asks us to adopt his own definition: "an emergency measure taken to prevent people from entering or leaving an area, building, or structure."

11

In response, the State agrees that adopting the plain meaning of the term "lock down" is appropriate. It also provides the definitions from Oxford and Merriam-Webster, as well as a definition from Cambridge Dictionary: "an emergency situation in which people are not allowed to freely enter, leave, or move around in a building or area because of danger." Cambridge Online Dictionary.

We agree with the parties that "lock down" is a commonly used term, and considering dictionary definitions is an appropriate method of arriving at its common meaning. "The first—and often only—step in statutory interpretation is to consider a statute's plain meaning from its text." *State v. Wilson*, 319 Kan. 55, 64, 552 P.3d 1228 (2024). "Absent some specialized statutory definition, the words of a statute typically should be given their ordinary meaning. And dictionaries (not surprisingly) supply those meanings. [Citations omitted.]" *State v. Baumgarner,* 59 Kan. App. 2d 330, 335, 481 P.3d 170 (2021).

The cited dictionary definitions of "lock down" from the parties all share a common characteristic—a restriction on the ability of people to enter or leave an area. The definition from Webster's New World includes a requirement that "authorities prohibit persons from leaving." Webster's New World College Dictionary 856. Oxford English Online Dictionary describes a lockdown as "a state of isolation, containment, or restricted access." Merriam-Webster Online Dictionary describes a lockdown as being "temporarily prevented from entering or leaving a restricted area," and Cambridge Online Dictionary describes the term as meaning "people are not allowed to freely enter, leave, or move around."

Travelbee argues that "lock down" means that no one is able to enter or exit the building. He specifically argues that "[w]hile the exterior door to the building was locked, the public still had access to the building by calling to have SOS staff come to the door to let them in." He believes that to be in a "lock down" as it pertains to the crime of

12

aggravated criminal threat, access must be *completely* prohibited and not just restricted. But Travelbee provides no authority for this conclusion, and his interpretation is inconsistent with the definitions supplied by the parties.

Only one of the definitions supplied by Travelbee, from Webster's New World, envisions a total prohibition on entering or existing a building as part of a "lock down." The remaining dictionary definitions encompass only a restriction on entering or exiting a building. Adopting that most common characteristic, the evidence in the record supports the jury's finding that Travelbee's actions caused SOS to enter a lockdown because entry to SOS was restricted as a result of Travelbee's actions. Connie Cahoone, director of SOS, was notified of Travelbee's call and made the decision to place SOS in a level one lockdown. As part of the lockdown, the front doors of the SOS building were locked. Any person who sought to enter the SOS building was required to call and seek permission or ring a bell outside the office. Once the individual seeking entry was screened and approved, an SOS employee escorted the person into the building.

Considered in a light most favorable to the State, the evidence supports the jury's finding that Travelbee's threats caused a lockdown. *Aguirre*, 313 Kan. at 209. Travelbee's conviction was supported by sufficient evidence.

### DID THE DISTRICT COURT ERR IN FAILING TO DEFINE "LOCK DOWN" FOR THE JURY?

Travelbee's final argument is that the district court committed clear error by failing to define "lock down" for the jury in its instructions.

*Standard of Review*

Because Travelbee failed to object to the jury instructions at trial, we will only reverse if the district court's decision to omit the definition of "lock down" was clearly

13

erroneous. An appellate court first determines whether the omission resulted in error, and if so, whether the error requires reversal. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

"An instruction is factually appropriate when sufficient evidence, viewed in the light most favorable to the requesting party, supports that instruction." *State v. Moore*, 319 Kan. 557, 567, 556 P.3d 466 (2024). Appellate courts use an unlimited review to determine whether the instruction was legally appropriate. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

In order to reverse on the basis of instructional error, we must be firmly convinced the jury would have reached a different verdict if the omitted language had been given. Travelbee has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

*The district court was not required to define "lock down" in the jury instructions.*

Travelbee argues that it would have been legally and factually appropriate for the district court to have defined "lock down." He reasons that without the definition, a reasonable jury would not conduct its own analysis of whether a lockdown occurred—it would simply rely on SOS labeling the circumstances a "lock down." He concludes that as a result, providing a definition to the jury of what constitutes a "lock down" was legally appropriate. Travelbee provides no legal support for this conclusion. Travelbee also argues that a definition of "lock down" would have been factually appropriate because of the facts concerning a lockdown in the record.

The State agrees that there was sufficient evidence of a "lock down" presented at trial to make the definition of "lock down" factually appropriate, but the State counters

that such an instruction would not have been legally appropriate because "lock down" is not a term that requires definition.

While we agree a definition of the term "lock down," would have been factually appropriate, the definition would not have been legally appropriate. The trial court should only define words in an instruction if the instructions as a whole would otherwise mislead the jury or cause it to speculate. *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014). The Kansas Legislature generally intends for a word to be used in its "ordinary, contemporary, and common meaning" unless it provides an alternative definition. *State v. Hambright*, 318 Kan. 603, 608, 545 P.3d 605 (2024). And juries may apply their understanding of common, ordinary words to evaluate the evidence before them. 318 Kan. at 607.

Here, there is no evidence that the jury was misled or that it speculated due to the lack of a definition of the term "lock down." As Travelbee stated in the briefing of his second issue, "courts assume the Legislature intends the word to be used in its 'ordinary, contemporary, common meaning.'" 318 Kan. at 610. And Travelbee provides no legal support for his argument that a definition was legally required. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Travelbee has failed to carry his burden of proof to show the district court erred by failing to define "lock down" for the jury. *Crosby*, 312 Kan. at 639.

Affirmed.